UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22-cv-23171-BLOOM/Otazo-Reyes

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

ARBITRADE LTD., CRYPTOBONTIX INC.,
TROY R.J. HOGG, JAMES L. GOLDBERG,
STEPHEN L. BRAVERMAN, and
MAX W. BARBER,

    Defendants, and

SION TRADING FZE,

    Relief Defendant.

_____/

**DEFENDANT STEPHEN L. BRAVERMAN'S REPLY IN SUPPORT OF
PARTIAL MOTION TO DISMISS COUNTS X, XI, AND XII OF
PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF**

Pursuant to Local Rule 7.1, Mr. Braverman submits this reply in support of his Partial Motion to Dismiss Counts X, XI, and XII (Doc. 30) ("Motion to Dismiss"). Plaintiff's Response in Opposition (Doc. 47) ("Opposition") fails to save the Complaint's defective allegations.

**I.    INTRODUCTION**

In his Motion to Dismiss, Mr. Braverman established that the Complaint failed to allege (1) that Mr. Braverman was generally aware that his role was part of an improper activity, (2) that Mr. Braverman substantially assisted a securities law violation, and (3) a primary securities law violation. Doc. 30. The Opposition contends that the SEC's Complaint has "more than adequately" stated a claim against Mr. Braverman for aiding and abetting liability under Counts X, XI, and XII, and that Mr. Braverman focuses on "hypothetical facts" not alleged rather than "looking squarely

132093296

at" the Complaint's allegations. Yet, far from proposing "hypothetical facts," Mr. Braverman's Motion to Dismiss highlights fatal gaps in the Complaint and Opposition.

The Opposition asserts that this Court may "clearly" infer liability from the circumstances alleged in the Complaint. But the Opposition merely parrots the Complaint and cites little to no case law in support of its assertion that the Complaint's allegations are enough to survive dismissal. The Counts alleged against Mr. Braverman are fraud claims and, as the Opposition acknowledges, must satisfy the heightened pleading requirements of Rule 9(b), "stating with particularity the circumstances constituting the fraud." Doc. 47 at 5. But the SEC falls far short of alleging the particularity required to meet their heightened pleading requirement, even after multiple years of investigation into this matter.

For example, there are no particularized allegations of Mr. Braverman's responsibilities as COO generally or whether he was involved in the gold transactions or the audits of that transaction. The Complaint fails to allege the amount of Bitcoin proceeds converted to cash or when the conversions took place. The Complaint fails to allege the amounts Mr. Braverman distributed, when he distributed them, to whom he made distributions, or what the distribution instructions were from Mr. Hogg or Mr. Goldberg. The Complaint fails to allege how much of the proceeds Mr. Braverman retained. Finally, the Complaint fails to allege which platform Mr. Braverman traded on, what he was required to disclose, who he was required to disclose it to, and when he should have made any disclosure. All of these failures to allege the required particularity are fatal to the SEC's Complaint against Mr. Braverman.

## II. ARGUMENT

### A. The Complaint Fails to Allege Particularized Facts Supporting an Inference of Scienter at Least as Strong as Any Opposing Inference.

The Court's key inquiry is "whether the [] complaint, taken as a whole, creates a 'strong inference' — one that is 'cogent and compelling' — that [Mr. Braverman] acted with the required scienter." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1247 (11th Cir. 2008). Although the Court must accept the facts alleged as true, the Court need not accept the SEC's inferences articulated in the Opposition. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (holding that the Court may infer from the factual allegations "obvious alternative explanations" that suggest lawful, rather than unlawful, conduct that plaintiff would ask the court to infer).

The Opposition cites "circumstantial factors" in the Complaint in an attempt to support an inference of scienter. Doc. 47 at 6. But the Complaint and the Opposition fail to allege particularized facts, circumstantial or otherwise, supporting a strong inference that Mr. Braverman was "generally aware" that his role at Arbitrade was part of an overall activity that is improper. Doc. 30 at 10-13. In fact, the specific Complaint allegations that the Opposition cites only confirm that the "surrounding circumstances" have not been alleged with particularity.

### i. Without Particularized Allegations of Fraud, Mr. Braverman's Role as COO of Arbitrade is Insufficient to Infer Scienter.

The Opposition merely states that because Mr. Braverman "was COO of Arbitrade … the Court may infer that Braverman was general [sic] aware … that his role was part of an improper activity." Doc. 47 at 9; *see also id.* at 6; Doc. 1 at ¶ 11. But the Complaint and Opposition fail to allege how Mr. Braverman supposedly acted with scienter due to any job responsibilities as COO. Mere allegations of "senior management positions . . . [are] insufficient to plead scienter." *In re Smith Gardner Sec. Litig.*, 214 F. Supp. 2d 1291, 1303 (S.D. Fla. 2002). Scienter may be imputed to top officials where particularized facts have been plead. *See Schultz v. Applica Inc.*, 488 F. Supp.

3

132093296

2d 1219, 1224 (S.D. Fla. 2007). The Eleventh Circuit affirmed dismissal of a complaint for failure to include particularized allegations of fraud when the complaint relied, in large part, on the defendant's position as CFO. *Brophy v. Jiangbo Pharms., Inc.*, 781 F.3d 1296, 1304–05 (11th Cir. 2015).

Although certain cases have "recognized a strong inference of scienter based in part on a senior [] executive's oversight of the processes" amounting to the purported improper activity, the Eleventh Circuit noted in *Brophy* that those cases had complaints that made "particularized allegations that the executives knew or were severely reckless in disregarding how those processes were distorted by fraud." 781 F.3d at 1304. Here, the Complaint makes no such specific allegations as to Mr. Braverman.

*Schultz* found an inference of scienter alleged against a CEO, where particularized facts were plead that he had been "directly confronted by well-positioned [] employees about problems with [a company product line] which contributed to an inability to reasonably estimate product returns," and failed to disclose this information. 488 F. Supp. 2d at 1225. The court concluded that these particularized allegations that the CEO knew of the product defects coupled with both the role that the product's sales played in the financial projections and a violation of the company's internal policy supported an inference of scienter. *Id.* at 1226. Here, the Complaint only alleges that Mr. Braverman was COO of Arbitrade and contains no particularized allegations of his involvement in the purported scheme to defraud.

*Schultz* is further instructive. Counts against two other defendants were dismissed because allegations of scienter against them were "conclusory;" plaintiffs did not allege with particularity that those defendants were "directly informed of product defects such that they knew or should

4

have known that their statements were deceptive or likely to mislead investors at the time they were made." *Id.* at 1227.

Where, as here, claims of scienter turn on "speculation and conclusory allegations," *id.*, they should be dismissed. The Complaint contains no allegations of facts concerning any responsibilities Mr. Braverman had as COO generally or with regard to the gold transaction and the related audits. Doc. 30 at 6-7. For example, the Opposition notes that Arbitrade retained two accounting firms to audit various aspects of the gold transaction with SION, but neither firm confirmed the existence of the gold bullion or SION's ownership rights and title to the gold. Doc. 47 at 6-7. The Complaint fails to allege, however, that Mr. Braverman had any role in retaining either firm, setting either firm's scope of work, overseeing the audits, or that he received information as to any shortcomings of the audits. Doc. 30 at 7.

Because the Complaint fails to allege *any* role Mr. Braverman had with respect to these audits, let alone with particularity, the allegations cannot support an inference that Mr. Braverman failed in some duty or responsibility related to the audits. That Mr. Braverman "never asked" the audit companies to "confirm the existence, location, ownership, or origin of the gold," never "objected to the narrow parameters of Elliot Davis' work," or purportedly "ignored [a] red flag presented" by SION, (Doc. 47 at 7), does not support an inference of scienter where there are no allegations that Mr. Braverman was aware of the audits, played any role in them, or supervised the audit process. *See Brophy*, 781 F.3d at 1304–05; *Schultz*, 488 F. Supp. 2d at 1225-26.

The Opposition relies, in large part, on Mr. Braverman's position as COO without any specific allegations as to Mr. Braverman's involvement or role with the gold acquisition, the audits, or any material misrepresentation or omissions. As in *Brophy* and *Schultz*, these allegations fail and the Counts against Mr. Braverman should be dismissed.

### ii. The Email Exchange Between Mr. Braverman and Bureau Veritas Fails to Support an Inference of Scienter.

The Opposition continues to mischaracterize an email between Mr. Braverman and Bureau Veritas in an attempt to establish an inference of scienter. *See* Doc. 47 at 7 n.1. Considering the email in context, Mr. Braverman sought to initiate discussions with an audit firm about the scope of an audit and was in no way "summarily dispens[ing] with the task" to retain an audit firm to provide an opinion about the existence of the gold. Doc. 30 at 7-8, n.1 (noting that Mr. Braverman's email stated, "We have an SKR that has already been audited by 3 accounting firms. I really want to discuss with you what the options are" and asks to speak about the options when meeting with the firm).

Again, there are no allegations in the Complaint that *anyone* in management at Arbitrade, let alone Mr. Braverman, knew or should have known that the prior audits were insufficient or that counting each bar of gold was necessary in order to confirm the existence of the gold. Accordingly, Mr. Braverman's explanation that this email with Bureau Veritas demonstrates his lack of general awareness as to the gold transaction and audits, (Doc. 30 at 11-12), is an "obvious alternative explanation" that contradicts the SEC's requested inference for general awareness of improper activity. *See Am. Dental Ass'n*, 605 F.3d at 1290.

### iii. The SEC Fails to Allege Particularized Allegations of Material Misstatements or Omissions.

Remarkably, the Opposition argues that because "there is a tiny universe of four press releases" the SEC need not identify which press release Mr. Braverman reviewed. Doc. 47 at 8 n.2. The SEC engaged in a multi-year investigation into the purported improper activities in this matter, and out of the SEC's "tiny universe" of purportedly false press releases, Mr. Braverman is left to guess at which release he reviewed, when he reviewed it, and what purportedly false

6

statement he reviewed within it. Once again, the SEC wholly fails to meet the particularity requirements of Rule 9(b).

The Complaint fails, on a basic, rudimentary level, to allege which statements in these press releases were material misrepresentations or omissions. Doc. 30 at 16-17. The Opposition fails to rebut Mr. Braverman's dismissal arguments on this point, merely stating, "These news and press releases each contained material misrepresentations and/or misleading omissions. The SEC is not required to go through every press release or statement made during a press conference and identify every single statement made and whether the statement is false and why." Doc. 47 at 12. But, the SEC must allege the who, what, when, where, and how of the allegedly material misrepresentations or materially misleading omissions, *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008), and the facts set forth in the Complaint fail to do so. Clearly, the SEC believes that it cannot be bothered to identify a single misleading statement or omission in one of four press releases or to identify which press release Mr. Braverman allegedly reviewed.

Accordingly, Counts X, XI, and XII should be dismissed with prejudice.

**B.   Mr. Braverman did not Substantially Assistance a Pump and Dump Scheme.**

The Opposition points to the same Complaint allegations that purportedly support Mr. Braverman's general awareness of improper activity to support an inference that Mr. Braverman was "instrumental to the fraud." Doc. 47 at 9-10. But as noted above in Part II(A), none of these allegations are alleged with particularity, and thus the Complaint fails to allege Mr. Braverman provided substantial assistance to the Primary Defendants. Doc. 30 at 9-11.

The Opposition asserts that "the SEC has not only alleged Braverman's substantial assistance, it can be clearly inferred from the allegations that, but for Braverman's involvement, the venture would not have been successful." Doc. 47 at 10. This "but for" statement is not alleged in the Complaint, nor can it be inferred from the non-specific allegations against Mr. Braverman.

7

At most, the Complaint alleges that Mr. Braverman was COO of Arbitrade, involved in the conversion of DIG sale proceeds from Bitcoin to fiat currency, and spoke to Bureau Veritas about a potential audit. Doc. 47 at 9-10. None of these facts are alleged with particularity.

There are no particularized allegations of Mr. Braverman's responsibilities as COO generally or whether he was even involved in the gold transactions or the audits of those transactions. The Complaint fails to allege the amount of Bitcoin proceeds converted to cash or when the conversions took place. The Complaint fails to allege the amounts Mr. Braverman distributed, when he distributed them, to whom he made distributions, or what the distribution instructions were from Mr. Hogg or Mr. Goldberg. The Complaint further fails to allege how much of the proceeds Mr. Braverman retained. Finally, the Complaint fails to allege which platform Mr. Braverman traded on, what he was required to disclose, who he was required to disclose it to, and when he should have made any disclosure.

Therefore, the Complaint fails to establish any action or inaction by Mr. Braverman that was "instrumental" to the fraud. *S.E.C. v. Levin*, 2013 WL 5588224, *15 (S.D. FL. Oct. 10, 2013); *see also S.E.C. v. Conrad*, 2017 WL 3485766, at *15 (N.D. Ga. Feb. 22, 2017), *on recons. in part*, 2017 WL 3500364 (N.D. Ga. May 2, 2017) (finding SEC failed to plead "substantial assistance" where it failed to show defendant had ability to control underlying decisions relating to the fraud). Accordingly, Counts X, XI, and XII should be dismissed with prejudice.

**C.   The Complaint Fails to Allege a Primary Securities Law Violation.**

The Opposition merely reiterates the Complaint's allegations against the Primary Defendants and improperly attempts to add new details to those allegations. For example, the Complaint does not allege that Mr. "Goldberg was kept informed of the details of the" gold purchase between Arbitrade and SION, but the SEC makes that statement in the Opposition twice. Doc. 47 at 11, 13. As noted above, the Opposition asserts that Mr. Hogg and Mr. Goldberg "had

8

132093296

ultimate[] authority of the statements" in the press releases and that Mr. Hogg "drafted the email news releases," Doc. 47 at 12, but the Complaint contains no such allegations. A brief cannot amend a complaint. *See Brahim*, 2014 WL 2918598, at *4. Moreover, these newly added allegations also lack particularity. For example, the SEC fails to allege who kept Mr. Goldberg informed of which gold purchase details.

Mr. Braverman's Motion to Dismiss established that the purportedly false and misleading statements in press releases and a news conference were not alleged with the requisite particularity and do not amount to evidence of deceptive conduct in furtherance of a scheme to defraud; the Complaint failed to allege facts supporting a strong inference of scienter by the Primary Defendants; and ultimately the Complaint fails to allege a primary violation of securities law. Doc. 30 at 11-20. Mere repetition of defective Complaint allegations coupled with newly (and improperly) added allegations fails to save this pleading. For these reasons, and the reasons stated in Mr. Braverman's Motion to Dismiss, the Complaint fails to allege a primary securities law violation. Accordingly, Counts X, XI, and XII against Mr. Braverman should be dismissed with prejudice.

### D.   Plaintiff's Request for Leave to Amend is Legally Insufficient.

The Opposition inserts a request for leave to amend the Complaint in a footnote. Doc. 47 at 13 n.3. This request is legally insufficient. When a plaintiff moves for leave to amend a complaint, the plaintiff must "set forth the substance of the proposed amendment or attach a copy of the proposed amendment" to the motion. *Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1277 (11th Cir. 2018) ("Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly.") Here, no

proposed amended complaint accompanied the Opposition, and the Opposition fails to convey the particularized substance of whatever amended complaint the SEC would file.

The Opposition requests that the Court grant the SEC leave to file an amended complaint "to the extent that this Court determines that there are any pleading deficiencies." Doc. 47 at 13 n.3. But this statement does not set forth the substance of the proposed amendment. This is improper. *See Newton*, 895 F.3d at 1277. Accordingly, leave to amend the Complaint should be denied.

### III.  CONCLUSION

For the reasons set forth in Mr. Braverman's Motion to Dismiss, and the reasons discussed herein, Mr. Braverman respectfully requests that the Court dismiss the Counts X, XI, and XII of Plaintiff's Complaint with prejudice and award such further relief as appropriate.

Date:  February 21, 2023

Respectfully submitted,

*/s/ Adam P. Schwartz*
Adam P. Schwartz
Florida Bar No. 83178
Erin J. Hoyle
Florida Bar No. 117762
CARLTON FIELDS, P.A.
P.O. Box 3239
Tampa, FL 33601-3239
Telephone:  813.223.7000
Facsimile:  813.229.4133
E-mail:  aschwartz@carltonfields.com
E-mail:  ehoyle@carltonfields.com

*Counsel for Stephen L. Braverman*

132093296