UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA CASE NO. 22-cv-23171-DAMIAN/D'ANGELO

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

ARBITRADE LTD., CRYPTOBONTIX INC., TROY R. J. HOGG, JAMES L. GOLDBERG, STEPHEN L. BRAVERMAN, and MAX W. BARBER,

Defendants.

_____/



FILED BY _____ D.C.
JUL 24 2025
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

**JOINT MOTION FOR RULE 11 SANCTIONS AND REFERRAL AGAINST CO-DEFENDANTS MAX W. BARBER AND STEPHEN L. BRAVERMAN FOR FRAUD ON THE COURT, PERJURY, FORGERY, AND LITIGATION ABUSE**

Defendants Troy R. J. Hogg and James L. Goldberg respectfully submit this Joint Motion for Rule 11 Sanctions and Referral against Co-Defendants Max W. Barber and Stephen L. Braverman. Pursuant to Federal Rule of Civil Procedure 11(b)-(c) and the Court's inherent supervisory authority, Defendants Hogg and Goldberg seek judicial findings and appropriate sanctions based on a pattern of egregious, prejudicial, and sanctionable conduct including: perjured testimony, misappropriation of corporate assets, fraud upon the Court, and abuse of the judicial process. This filing is made with the intent to protect the integrity of these proceedings and does not waive or forfeit any rights to pursue full compensatory or punitive damages against the involved parties in ongoing civil litigation.

## I. LEGAL STANDARD

Rule 11(b) of the Federal Rules of Civil Procedure provides that when a party signs, files, or advocates a written submission to the Court, they certify that to the best of their knowledge, information, and belief, formed after reasonable inquiry:

- (1) it is not presented for any improper purpose;

- (2) the claims, defenses, and legal contentions are warranted by existing law;

- (3) the factual contentions have evidentiary support; and

- (4) the denials of factual contentions are warranted on the evidence.

Violation of these duties warrants sanctions under Rule 11(c). Defendant Hogg expressly preserves all rights to seek recovery for damages, asset recovery, and related equitable relief in pending and future litigation.

## II. SANCTIONABLE CONDUCT BY MAX W. BARBER

### 1. Fraud and False Title Claims:

Barber falsely represented to Arbitrade and Cryptobontix that he had authority to convey title to gold bullion he never owned or controlled, in violation of the Bailment Agreement and supporting SKRs. He fraudulently induced the company to issue token-backed announcements based on non-existent gold.

### 2. Theft of Company Funds and Assets:

Barber received in excess of $6.425 million USD in payments from the company for a gold pledge that never existed and which he had no legal authority to provide. This constitutes a direct

and knowing misappropriation of corporate funds under fraudulent pretenses. Barber initially used a fraudulent $100 million buyout agreement—never supported by actual funds—to claim ownership rights over the Mandela Hands sculpture. A lost value of $10 - $50 million dollars as recognized by the SEC's own filings. After cancelling that purchase agreement, he pivoted to asserting that the sculptures were collateral for missed gold payments under the same fraudulent gold pledge. At various points, he also misrepresented that as long as Arbitrade remained current with payments, the company could sell portions of the pledged gold and retain any profit from increases in gold value—none of which materialized or were supported by legal title.

**3. Forgery and Contract Alteration:**

Barber unilaterally altered executed agreements after the board had signed, materially changing terms without disclosure or consent. He also forged Defendant Hogg's signature on one or more agreements, as evidenced by exact signature overlays and metadata inconsistencies.

**4. Misappropriation of Funds and Company Assets:**

Barber directed funds received on behalf of the company into unrelated accounts, failed to distribute gold as promised, and fraudulently sold Cryptobontix to Braverman before fulfilling agreed-upon buyout terms with Hogg at a forced fraction of the true value at the time. All corporate payments were diverted through shell entities, notably SION Trading FZE and then deposited into accounts controlled by Scotia International of Nevada, a company associated with Barber's father, in a clear pattern of corporate veil abuse and diversion of proceeds.

**5. Coercion and Threats to Induce Sale:**

Barber threatened Defendant Hogg and the Arbitrade board with a class action lawsuit and gold cancellation if they did not sell under coercive and fraudulent pretenses, despite having never

fulfilled the gold commitment. This was accomplished in concert with Steve Braverman to incite token holders in threatening class action lawsuits.

**6. False Financial Commitments and Wire Fraud:**

Barber falsely offered a $234 million line of credit he had no ability to fund, and promised to provide $20 million in operational financing to the board if they supported his acquisition of Hogg's shares. He offered to buy out Defendant Hogg for $100 million without any financial capacity to complete the deal. Barber then committed wire fraud by falsely claiming to have paid Malcolm Duncan $1.4 million in exchange for the Mandela Hands—payment that was never completed, though the asset was seized.

**7. Bermuda Law Violations and License Harm:**

Barber failed to comply with Bermuda regulatory requirements, including due diligence and financial disclosures required by the Bermuda Monetary Authority (BMA), thereby undermining the legality of his corporate takeover. As a result, Arbitrade lost its license to operate, causing catastrophic losses to shareholders and stakeholders.

**8. Orchestrated Sale Under False Pretenses:**

Barber and Braverman falsely claimed that Arbitrade had defaulted on $8.6 million in gold payments all while Barber held Hogg's position under a 90 day payments schedule for said $100 million purchase, and used this falsehood to incite tokenholders to threaten litigation. This coercion was used to pressure Hogg and the board into selling under duress for $1 million, in violation of federal securities and corporate law. A value less than $1/100^{th}$ of the true value at the time.

## III. SANCTIONABLE CONDUCT BY STEPHEN L. BRAVERMAN

**1. Fiduciary Breach and Board Coup Attempt:**

Braverman, with Kent Swig, Charles Woodworth, and Dan Sweet, conspired to unlawfully seize control of the Arbitrade board and override corporate governance in a self-enrichment scheme.

**2. Coercion and Duress in Sale Negotiations:**

Braverman conspired with Barber to create pressure and fear of litigation or collapse, resulting in Hogg being forced to sell under duress.

**3. False Public Statements and Cover-Ups:**

Braverman issued deceptive communications to token holders and the public regarding corporate buyouts, control changes, and token-related claims that were materially false and intentionally misleading.

**4. Theft of Mining Rigs and Revenues:**

Braverman misappropriated cryptocurrency mining rigs and earnings generated through Dignity (DIG) Mining. Despite receiving the benefit of a forced buyout, he failed to pay the agreed purchase price in full to Barber.

**5. Token Dumping and Insider Trading:**

Braverman received DIG tokens through the fraudulent acquisition and proceeded to dump them into the market, often to personal associates, for self-enrichment.

**6. Multi-Entity Asset Diversion and Disguise:**

Braverman used a complex series of offshore and shell companies to acquire, disguise, and exploit corporate assets wrongfully taken from Arbitrade and Cryptobontix. He acquired ABCOR International, a Belizean company, from William Ricky Sanders and Shaun Heseltine to serve as

the buyer in the forced $1 sale of Hogg's Arbitrade position and a $1 million sale of Hogg's ownership in Cryptobontix position. He used ABCOR to acquire Cryptobontix from Barber for $2 million, despite Barber having no legal authority to sell as he avoided completing the terms of the purchase. Braverman routed mining rigs and profits through Dignity Mining, while later claiming DIG tokens via Dignity Gold, presenting himself publicly as a "white knight" who rescued the defunct company.

**7. Theft of Stock and Rig Earnings:**

Braverman unlawfully seized Hogg's corporate stock (later recovered via court action) and withheld previous corporate cryptocurrency earnings as a tool to try and gain ownership over the mining assets. He took Arbitrade's mining revenues from Hayden Gill without board approval or disclosure while Gill was still under contract with Arbitrade.

**8. Retaliation and False Attribution:**

Braverman later falsely blamed Hogg for the DIG token hack and over-issuance of tokens without evidence, in a deliberate cover-up of his own asset diversion and token sale profits. Later he was seen withdrawing cryptocurrency from the exchange long after the alleged over-issuance.

**9. Lavish Personal Use of Corporate Funds:**

Braverman diverted corporate funds from token sales for personal trips, cars, gifts, gambling, personal investments, and luxury shopping—never authorized by the board and never disclosed to token holders or investors.

# IV. SANCTIONABLE CONDUCT BY CO-DEFENDANTS AND EVIDENTIARY CONTAMINATION

As detailed in Defendant Hogg's Motion for Sanctions and Rule 11 Referral, the evidentiary foundation for much of the SEC's case rests on sources that are now subject to formal allegations of fraud upon the Court. Co-Defendants Max W. Barber and Stephen L. Braverman have been shown to have submitted or relied on falsified contracts, perjured deposition testimony, forged signatures, and altered agreements, all of which materially taint the SEC's evidentiary pool.

Specifically:

- Barber fabricated his authority to pledge gold, forged agreements, and altered company documents after execution.

- Braverman misappropriated mining rigs and DIG tokens, issued false statements to tokenholders, and diverted corporate funds for personal enrichment.

- Both defendants coordinated in a coercive, retaliatory scheme to force Defendant Hogg out under false pretenses, culminating in unlawful asset diversion, misrepresentation to tokenholders, and false attribution of token over-issuance.

This misconduct not only supports sanctions, but it also fundamentally severs the factual and legal connection between their conduct and that of Defendants Hogg, who was removed from operational control and had no involvement in the fraudulent activities at issue.

Permitting the SEC to introduce evidence derived from, authored by, or associated with Braverman and Barber—without formally severing Hogg and Goldberg from the alleged misconduct—would inflict extreme prejudice and reward deliberate litigation abuse.

## V. ONGOING CIVIL LITIGATION BY HOGG FURTHER DEMONSTRATES GOOD FAITH AND REBUTTAL OF SCIENTER

In July 2021—more than a year before the SEC filed this enforcement action—Defendant Hogg brought a civil lawsuit against Braverman and Barber in New York Supreme Court (Index No. 656639/2021), asserting claims for fraud, asset misappropriation, and coercion. The allegations in that case mirror those presented in this Motion and have been actively litigated.

Hogg's willingness to initiate litigation, at his own expense, to unwind the fraudulent conduct and recover company assets fundamentally rebuts any claim of scienter or complicity. Rule 11 sanctions are particularly appropriate where Defendants Braverman and Barber have not only engaged in litigation misconduct here, but are also the named targets of longstanding fraud allegations in other forums.

## VI. PRIOR LITIGATION FILED AGAINST BRAVERMAN AND BARBER SUPPORTS DEFENDANT'S POSITION AS VICTIM, NOT CO-CONSPIRATOR

Defendant Hogg initiated civil litigation in the Supreme Court of New York on July 22, 2021—more than one year prior to the SEC's Complaint in this matter—naming Stephen Braverman, Max Barber, and their related entities as defendants for fraud, misappropriation, asset diversion, coercion, and conversion. That action, Troy J. Hogg et al. v. Braverman et al., Index No. 656639/2021, sought more than $100 million in damages and equitable relief for the very conduct now alleged by the SEC as part of this enforcement action. This claim under representation is currently being amended to reflect the true damages.

Among other claims, the state court complaint alleges:

- Braverman and Barber conspired to take control of Arbitrade and Cryptobontix through coercion and duress;

- They fabricated gold-related obligations and used fraudulent documents to pressure Defendant Hogg into surrendering his ownership;

- They seized cryptocurrency mining rigs and mining earnings valued between $46–51 million;

- They committed a coordinated campaign of insider token sales, asset transfers, and board manipulation.

These allegations are well-documented, supported by extensive corporate records, and were filed publicly in 2021. The SEC was on notice of these claims prior to initiating its enforcement action but has nevertheless attempted to conflate Defendant Hogg's role with that of the actors he actively litigated against.

This contradiction is dispositive. One cannot simultaneously be a whistleblower and a co-conspirator; a victim of fraud and its mastermind. By failing to acknowledge this publicly filed litigation and attempting to attribute Braverman and Barber's conduct to Defendant Hogg, the SEC has undermined its scienter theory, improperly joined unrelated claims, and furthered litigation misconduct. The Court should consider this prior litigation as evidence that Defendant Hogg acted in good faith to recover company assets—not to mislead or defraud the public.

## VII. REQUEST FOR RELIEF

**WHEREFORE, Defendants Hogg and Goldberg respectfully move this Court to:**

1. Issue an Order to Show Cause why Defendants Barber and Braverman should not be sanctioned under Rule 11;

2. Make formal findings of fact as to the misconduct detailed herein;

3. Strike any filings made by Barber or Braverman that rely on falsified evidence or contradict sworn discovery;

4. Impose such other sanctions as the Court deems just and necessary to protect the integrity of these proceedings.

Dated: July 22, 2025

Respectfully Submitted,

_____
Troy R. J. Hogg

Pro Se Defendant

72859 Sunridge Crescent

Dashwood, Ontario, Canada

troyhogg2020@protonmail.com

(519) 330-6570



_____

James L. Goldberg, Pro Se Defendant

515 NW 120th St

Miami, FL 33168

James_Goldberg@msn.com

(305) 785-6900