

FILED BY _____ D.C.

JUL 29 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

**EXHIBIT A**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 22-cv-23171-DAMIAN/D'ANGELO**

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

ARBITRADE LTD.,
CRYPTOBONTIX INC.,
TROY R.J. HOGG,
JAMES L. GOLDBERG,
STEPHEN L. BRAVERMAN, and
MAX W. BARBER,

Defendants.

---

**DEFENDANT MAX W. BARBER'S PROPOSED SUR-REPLY IN OPPOSITION TO**
**PLAINTIFF'S OMNIBUS MOTION IN LIMINE**

SUR-REPLY IN OPPOSITION

## I.    On Reliance on Counsel (Responding to Point 1 of ECF 419)

In its Reply, the SEC newly argues that evidence of counsel's involvement is irrelevant because Defendants cannot meet the formal elements of a reliance defense, citing new case law like S.E.C. v. The Movie Studio, Inc., No. 21-cv-61686-JMS, 2024 WL 7082206 (S.D. Fla. Dec.

23, 2024). This mischaracterizes the defense's position by conflating a formal advice-of-counsel defense with evidence offered solely to rebut scienter. Mr. Barber proffers this evidence not to abdicate responsibility, as was the case in The Movie Studio, Inc., 2024 WL 7082206, at *4, but for the limited purpose of showing his state of mind and negating the high standard of "severe recklessness" required for a scienter finding. See Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1282 n.18 (11th Cir. 1999). Controlling case law supports this distinction. This very Court held in S.E.C. v. Huff, 758 F. Supp. 2d 1288, 1349 (S.D. Fla. 2010), that even where a formal defense is not met, evidence of consulting counsel is directly "relevant to the question of good faith and intent". The SEC's attempt in its Reply to dismiss Huff because Defendants cannot meet the formal defense elements completely misses the point of the Huff court's ruling. Other federal courts have reached the same conclusion, recognizing the difference between asserting a formal defense and introducing such evidence to show a defendant's state of mind. See, e.g., S.E.C. v. Kokesh, No. 09-cv-1021-SMV-LFG, 2014 WL 11516545, at *5 (D.N.M. July 21, 2014). To ignore this clear line of precedent would prevent the jury from fairly assessing Mr. Barber's mental state and would be contrary to established case law.

## II. On Evidence of Gold (Responding to Point 2 of ECF 419)

The SEC's Reply raises several new arguments not present in its original Motion in Limine [ECF No. 338]. Specifically, the SEC now argues that evidence offered for a non-hearsay purpose must still be forensically authenticated; it asserts prejudice because it "was deprived of the opportunity to take Rasmussen's deposition; and it attacks the credibility of offering the Farhat affidavit for a non-hearsay purpose and falsely asserts that it "was not given the opportunity to cross-examine Farhat at the time these statements were made". These arguments

all fail, as they are procedurally improper and attempt to weaponize the agency's own lack of diligence.

a)      **Authentication:** The SEC's demand for forensic authentication is untenable and directly contradicted by its own expert's limited scope of work. The SEC now insists that Mr. Barber must meet this high evidentiary bar, yet its own designated gold industry expert, Faisal Ahmed, was not tasked with this crucial work. According to the SEC's own filing, Mr. Ahmed's review was limited to opining on whether Defendants' actions "comported with the international standards and code of practices governing the gold sector." Indeed, as Mr Ahmed testified in his deposition, his scope of work did not include forensic investigation or validation of the very documents at the heart of this transaction:

Q: *"So, the question is, with that statement in the report and with your previous statements of scope of work, you were not given the scope of work to validate the documents that we just reviewed of UBS, which are the hallmarking list, the refining list, and then the vaulting receipts, such as the G4S, vaulting receipt and SKR. So, with that said, is that an accurate reading of your report with what we've just reviewed?"*

A: *When I say that the scope of work did not require us to validate a document, which means that to investigate and challenge the, whether it is a fake document or a genuine document. Right. So that's an investigation and a forensic review.* See Attached Exhibit B (Transcript of Faisel Ahmed Deposition June 11, 2025 p. 89:6-19)

The SEC cannot be permitted to impose a standard of proof on the defense that it failed to apply to its own expert investigation. The SEC's failure to task its own expert with validating the documents demonstrates that its current demand is not a good-faith evidentiary objection based

on a genuine question of authenticity, but a litigation tactic designed to create an insurmountable and legally unnecessary burden for the defense. The evidence is not offered to prove the truth of the documents' contents, but for the permissible non-hearsay purpose of showing its "effect on the listener"—Mr. Barber's state of mind. For this purpose, authentication under Fed. R. Evid. 901 is satisfied by Mr. Barber's own testimony that the documents are what he received and relied upon.

b).     **Rasmussen Appraisal:** The SEC's new claim of prejudice is a direct result of its own litigation choices, not any alleged non-disclosure by Defendants. The SEC has been in possession of the Rasmussen appraisal for years and cannot genuinely claim surprise. Indeed, the record is devoid of any effort by the SEC to depose Mr. Rasmussen or even to request an extension of discovery to do so. This inaction is fatal to their claim of prejudice. Under Fed. R. Civ. P. 37(c)(1), a party's failure to make a required disclosure (or supplement a prior response) generally precludes the use of that information or witness. However, the rule explicitly provides an exception: such a failure is excused if it was "substantially justified or is harmless." As the Eleventh Circuit has articulated, a failure to disclose is considered harmless where the opposing party had actual notice of the information or the means to obtain it. *See Bearint v. Dorell Juv. Grp., Inc.,* 389 F.3d 1339, 1353 (11th Cir. 2004)(affirming that where a party had the opportunity to discover the evidence, even if not formally disclosed, the failure to disclose may be harmless). Here, the SEC's admitted, long-standing possession of the Rasmussen appraisal, coupled with their deliberate decision not to pursue discovery on it, renders any purported "failure to disclose" by Defendants entirely harmless. The SEC cannot now manufacture prejudice from its own litigation strategy.

c)	**Hon. Mike Farhatt Affidavit:** The SEC improperly raises new arguments for the first time in its Reply—including a credibility attack and a detailed hearsay analysis—which should be disregarded as procedurally improper. See, e.g., Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338, 1342 (11th Cir. 2005). Should the Court consider the merits, the SEC's arguments fail for two key reasons. First, the affidavit is admissible for a non-hearsay purpose. Mr. Barber proffers the **Hon. Mike Farhatt's** affidavit not for the truth of the matter asserted—that **Hon. Mike Farhatt** physically inspected the gold—but for its "effect on the listener." It is directly probative of Mr. Barber's state of mind and serves to rebut the high standard of scienter by showing that his receipt of a sworn statement from an inspector contributed to his good-faith belief in the transaction's legitimacy. The SEC's detailed hearsay analysis, including its arguments against the exceptions under Fed. R. Evid. 804(b)(1) and Fed. R. Evid. 807, is therefore a red herring; it improperly conflates the truth of the affidavit's contents with its relevance to Mr. Barber's subjective belief. Second, the SEC cannot now claim prejudice or a lack of trustworthiness resulting from its own lack of diligence. The SEC knowingly misrepresents its inability to cross-examine Mr. Farhat, yet it had over 19 months to depose him after he executed his sworn affidavit on August 2, 2022, but chose not to do so before he passed away in March 2024. The SEC cannot weaponize its own discretionary investigative choices. In a prior brief responding directly to Mr. Barber's claims that its investigation was deficient for its failure to ever contact Mr. Farhat, the SEC argued "it possesses sole discretion under 15 U.S.C. § 78u(a)(1) to determine the scope of its investigations" (ECF No.374 p.4). It is a hypocritical abuse of that discretion to now claim an affidavit is untrustworthy precisely because it chose not to investigate the affiant. This claim also ignores that a formal affidavit, sworn under penalty of perjury, carries inherent indicia of trustworthiness that a casual statement does not.

**d)** **Photographs:** The SEC's Reply improperly raises new arguments against the photographs that were not present in its original Motion in Limine. Having initially challenged the gold photographs (Cat. 7) only on relevance grounds and the photographs of people (Cat. 9 & 10) only on authentication grounds, the SEC now improperly broadens its attack to argue all photographs fail both tests. Such arguments, raised for the first time in a reply, are not properly before the Court and should be disregarded. See, e.g., Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338, 1342 (11th Cir. 2005). Moreover, the SEC's new arguments are substantively meritless. The SEC's new authentication challenge to the gold photos is baseless. Under Fed. R. Evid. 901(a), photographs are routinely authenticated by a witness with personal knowledge testifying that the photo is a "fair and accurate representation of the subject matter," a standard easily met at trial. United States v. Clayton, 643 F.2d 1071, 1074 (5th Cir. Unit B 1981). Likewise, the new relevance challenge to the photos of key individuals fails. Under the liberal standard of Fed. R. Evid. 401, these photos are highly relevant to the Defendants' state of mind. They make the Defendants' good-faith belief in the transaction's legitimacy "more probable" by corroborating interactions between key parties like "Mr. Ronggolawe," "Dr. Bokhem," and G4S personnel, which is directly probative of scienter. See United States v. Tinoco, 304 F.3d 1088, 1120 (11th Cir. 2002); S.E.C. v. Huff, 758 F. Supp. 2d 1288, 1349 (S.D. Fla. 2010).

**III. On the State Court Action Against Ronnie Moas (Responding to Point 4 of ECF 419)**

In its Reply, the SEC reveals for the first time a critical new fact: it "does not intend to call Moas as a witness". This new information fundamentally changes the relevance of the state court action against Mr. Moas. The SEC's decision not to call its own complaining witness—the alleged original source of its investigation—is highly probative. The evidence of the state court judgment against Moas is no longer just for impeaching a potential witness; it is now critical to

challenge the integrity and foundation of the SEC's entire investigation, which is a permissible

defense purpose. See United States v. Abel, 469 U.S. 45, 52 (1984). The jury is entitled to know

that the investigation was instigated by an individual with a history of bias whom the SEC now

refuses to put on the stand.

## IV. Evidence or Argument Regarding Whether the SEC attempted to Verify the Gold (responding to point 6 of ECF 419)

Contrary to the SEC's new argument, its failure to investigate the existence of the gold is

highly probative circumstantial evidence admissible to negate both materiality and scienter. The

SEC cannot argue to a jury that the gold's existence was the single most material fact under Basic

Inc. v. Levinson, 485 U.S. 224, 231 (1988), while simultaneously contending it was so

immaterial to its own multi-year fraud investigation that it was not worth a single inquiry. A jury

could reasonably infer from the SEC's inaction that the gold's existence was not as critical as

alleged, thus making any misstatement less material. Furthermore, this inaction is powerful

evidence corroborating the Defendants' good faith, which is a complete defense to scienter under

Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n.12 (1976). If the Defendants invited the SEC to

inspect the gold and the SEC declined, that fact strongly rebuts the allegation of a "mental state

embracing intent to deceive." The argument that this evidence improperly puts the investigator

on trial is contrary to established law. It is a bedrock principle that a defendant has the right to

challenge the adequacy of the investigation. See Kyles v. Whitley, 514 U.S. 419, 446 (1995).

Controlling Eleventh Circuit precedent holds that the "defense is entitled to show that the

government's investigation was sloppy and that this sloppiness casts doubt on the government's

case." United States v. Sheffield, 992 F.2d 1164, 1170 (11th Cir. 1993). The SEC's new reliance

on U.S. v. Day is critically misplaced. The court in Day excluded evidence about the

"mishandling of evidence" that had already been collected. See United States v. Day, 789 F.2d 1217, 1223 (6th Cir. 1986). Here, the issue is not the "mishandling" of existing evidence, but the complete failure to investigate the central asset of the entire case—the physical gold. Under the controlling precedent in Sheffield, Defendants must be permitted to argue that this failure casts significant doubt on the reliability of the SEC's case. Finally, any prejudice to the SEC under Fed. R. Evid. 403 is not the "unfair" prejudice the rule is designed to prevent. The prejudice the SEC fears is the legitimate damage to its case from exposing a deficient investigation. The true prejudice would be to exclude this evidence, allowing the SEC to present a skewed narrative while denying Defendants their right to present a complete defense.

## V. On Criticizing the SEC's Investigation (Responding to Point 14 of ECF 419)

The SEC's Reply frames its argument in a new, starker way: "The SEC is not on trial", and the jury has no role in evaluating its investigation. This framing mischaracterizes the defense's argument. The defense is not challenging the SEC's right to investigate; it is arguing that the adequacy and choices made during the investigation are directly relevant to the weight and credibility of the evidence the SEC chose to present at trial. As the Supreme Court has held, a defendant has the right to challenge the adequacy of the investigation leading to the charges. See Kyles v. Whitley, 514 U.S. 419, 446 (1995). The SEC's reliance on cases like United States v. Cheung Kin Ping, 485 F.2d 689, 691 (5th Cir. 1973) and S.E.C. v. True N. Fin. Corp., No. 10-cv-3995 (DMN/JJG), 2013 WL 4788033, at *2 (D. Minn. Sept. 3, 2013) is misplaced. These cases stand for the proposition that a jury should not pass judgment on an agency's abstract "law enforcement policy" or its ultimate "charging decision". The defendants do not seek to have the jury do this. Instead, they seek to introduce evidence about the specific actions—or inactions—taken during the investigation of this specific case. While the jury has no role in

setting enforcement policy, it absolutely has a role in evaluating the quality of the evidence presented before it, and the story of how that evidence was gathered is part of that evaluation.

## VI. On the SEC's New Hearsay Objection to Mr. Barber's Testimony (Responding to Point 9 of ECF 419)

The SEC's new hearsay and improper expert opinion objections fail because Mr. Barber's testimony is admissible lay opinion under Fed. R. Evid. 701. Mr. Barber's testimony regarding "the norms of gold transactions and the role of a Safe Keeping Receipt (SKR)" is based on his particularized knowledge acquired through years of personal experience as a licensed gold trader. This is not improper expert testimony. The Eleventh Circuit's controlling precedent in Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., Ltd., 320 F.3d 1213, 1219 (11th Cir. 2003), holds that testimony based on "particularized knowledge garnered from years of experience within the field" is admissible lay opinion. This aligns with the Advisory Committee Notes to Fed. R. Evid. 701, which permits a business owner to testify based on knowledge gained from their position. Indeed, courts in this Circuit permit such testimony. See, e.g., Ag-Gate, LLC v. T-System, Inc., No. 8:18-cv-2722-T-33AEP, 2020 WL 4260993, at *3 (M.D. Fla. July 24, 2020). Such testimony satisfies the three-part test under United States v. Hill, 643 F.3d 807, 841 (11th Cir. 2011), because it is rationally based on Mr. Barber's own perceptions, is helpful to the jury in understanding the transaction's context, and is not based on specialized knowledge within the scope of Fed. R. Evid. 702. The authorities cited by the SEC are inappropriate. Its reliance on Barn Light Elec. Co., LLC v. Live Ventures, Inc., No. 8:21-cv-1401-WFJ-AEP, 2022 WL 1810721, at *4 (M.D. Fla. June 2, 2022) misapplies the hearsay rule, as testifying about an industry norm learned through experience is stating a fact, not repeating an out-of-court statement. Other cases are equally distinguishable: Smith v.

E-Backgroundchecks.com, Inc., 81 F. Supp. 3d 1342, 1357 (N.D. Ga. 2015) is inapplicable because Mr. Barber will testify to market norms in which he personally operated, not the practices of other companies; and cases like Great Lakes Ins. SE v. Wave Cruiser LLC, 36 F.4th 1346, 1354 (11th Cir. 2022) and S.E.C. v. BankAtlantic Bancorp, Inc., 39 F. Supp. 3d 1346, 1352 (S.D. Fla. 2014) failed because his testimony is based on personal perception, not abstract theory. Fundamentally, it is unfair to permit the SEC's expert to testify on "international standards" while precluding Mr. Barber, a defendant with direct experience in that industry, from offering his own perception-based testimony in rebuttal. This tactic would present the jury with a one-sided, misleading narrative and violate Mr. Barber's right to present a complete defense.

## VII. On Personal Hardships (Responding to Point 12 of ECF 419)

The SEC's Reply introduces new case law, S.E.C. v. Spencer Pharm., Inc., No. 12-cv-12334-IT, 2015 WL 5749436, at *5 (D. Mass. Sept. 30, 2015) and S.E.C. v. Jacobs, No. 13-cv-1289, 2014 WL 12597830, at *3 (N.D. Ohio July 30, 2014), for the proposition that the effects of an investigation are irrelevant. The SEC's reliance on this new case law is misplaced. Those cases state that juries should not consider the potential future consequences of a verdict. The defense argument, however, is distinct. The evidence is not about future hardship; it is about the past and present prejudice to the Defendants' due process rights caused by the litigation's five-year duration, which has crippled their ability to mount an effective defense. As the Supreme Court has recognized, excessive delay can "significantly handicap" a defense. See Occidental Life Ins. Co. v. EEOC, 432 U.S. 355, 373 (1977). This is not an appeal for sympathy but an argument that goes to the fundamental fairness of the trial itself.

## VIII. The Parties' Divergent Approaches to Limiting Instructions Demonstrate that Exclusion is an Unwarranted and Drastic Remedy.

A review of the briefing on this motion reveals a stark and telling contrast: Defendant Barber has proposed a limiting or cautionary instruction as a less drastic alternative to exclusion on eight separate occasions in Barber's initial Opposition Motion in Limine (ECF No. 430), while the SEC has proposed such a remedy zero times in either its initial Motion (ECF No. 338) or its Reply (ECF No. 419). Mr. Barber's repeated proposals demonstrate a good-faith effort to work within the Federal Rules. His approach aligns with the Eleventh Circuit's established principle that a "cautionary instruction is the preferred remedy" over the wholesale exclusion of evidence. See United States v. Jernigan, 341 F.3d 1273, 1285 (11th Cir. 2003). Conversely, the SEC's refusal to contemplate any remedy short of complete exclusion demonstrates an uncompromising 'all-or-nothing' strategy. The Federal Rules, particularly Fed. R. Evid. 403, favor the admission of relevant evidence, with exclusion reserved as a "drastic remedy" only when prejudice substantially outweighs probative value. See Stewart v. Hooters of Am., Inc., No. 8:04-cv-40-T-17-MAP, 2007 WL 1752844, at *1 (M.D. Fla. June 18, 2007). This disparity highlights that the defense is seeking a fair presentation of all relevant facts, while the SEC seeks to win by preventing the jury from hearing them.

## IX. The SEC's Motion Seeks to Create a Trial by Narrative, Violating Due Process by Eliminating the Entirety of the Defense on Scienter.

The SEC's Omnibus Motion in Limine (ECF No. 338) is not a targeted request to exclude isolated, prejudicial pieces of evidence. It is a strategic effort to systematically dismantle the entire evidentiary basis for the Defendants' defense on the central and most critical element of

the case: scienter. If the Court were to grant the SEC's motion, the trial would cease to be an

adversarial search for the truth. This outcome is antithetical to the principles of due process and

the constitutional right to present a complete defense.

1.      **The Motion Precludes Any Rebuttal of "Severe Recklessness".** The SEC must

prove scienter, which requires, at a minimum, "severe recklessness". The evidence the SEC seeks

to exclude—including evidence of consulting with attorneys, documents relied upon, and witness

testimony—is precisely the evidence needed to rebut this high standard. By seeking to bar all of

this evidence, the SEC is asking the court to make it impossible for the jury to ever consider the

Defendants' state of mind.

2.      **A Trial Without a Defense is a Due Process Violation.** The right to due process

is "the right to a fair opportunity to defend against the State's accusations." Chambers v.

Mississippi, 410 U.S. 284, 294 (1973). The Eleventh Circuit has repeatedly reversed convictions

where courts excluded "crucial relevant evidence necessary to establish a valid defense" or

evidence "critical to explaining the defendant's state of mind". See United States v. Todd, 108

F.3d 1329, 1332 (11th Cir. 1997); United States v. Word, 129 F.3d 1209, 1213 (11th Cir. 1997);

United States v. Stephens, 365 F.3d 967, 977 (11th Cir. 2004). To grant the SEC's motion would

be to do exactly what this precedent forbids.

3.      **The Motion Seeks a Default Judgment Under the Guise of a Trial.** Ultimately,

the SEC's motion asks the Court to sanction a trial where the conclusion is predetermined. This

"all-or-nothing" approach reveals the motion's true purpose: to win not on the merits of its case,

but on the absence of a defense. The Court should reject this attempt to secure victory by

evidentiary strangulation and allow the jury to perform its constitutional function: to hear a complete case from both sides and determine the truth.

## CONCLUSION

For the reasons stated herein, because the SEC's Reply raises new arguments, case law, and facts that could not have been anticipated, Defendant Max W. Barber respectfully requests that the Court grant this Motion for Leave and accept the foregoing Sur-reply for consideration. Mr. Barber further requests that the Court deny the SEC's Omnibus Motion in Limine.

Dated: July 24, 2025                                 Respectfully submitted,

                                                    /s/ Max W. Barber
                                                    Max W. Barber Defendant, Pro Se
                                                    1028 S 1900 E SLC, Utah 84108
                                                    Tel: (801) 518-1821
                                                    23blackbee@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of July, 2025, I served a true and correct copy of the foregoing via the Court's CM/ECF system, Email, and or First Class Postage to the following counsel of record and parties.

Respectfully submitted,

/s/ Max W. Barber
Max W. Barber Defendant, Pro Se
1028 S 1900 E SLC, Utah 84108
Tel: (801) 518-1821
23blackbee@gmail.com

Via E-mail Alice K. Sum
Senior Trial Counsel
U.S. Securities and Exchange Commission
Email: sumal@sec.gov

Via First Class Postage Clerk of Court
        U.S. District Court for the Southern District of Florida
        400 North Miami Avenue
        Miami, FL 33128

Via E-mail Stephen L. Braverman, pro se
        E-mail: sbraverman22@gmail.com

Via E-mail Troy R.J. Hogg, pro se
        E-mail: troyhogg2020@protonmail.com

Via E-mail James L. Goldberg, pro se

E-mail: James_Goldberg@msn.com

**EXHIBIT B**

Transcript of Faisel Ahmed Deposition, June 11 2025 p.89:6-19)

89

1 Q Yeah, let me go to it. Yeah, there are no bank

2 transactions, KYC, CDD documents, refining and vaulting

3 receipts to support?

4 A Yeah, this is, this is part of the report. What's the

5 question on this--?

6 Q So, the question is, with that statement in the

7 report and with your previous statements of scope of work, you

8 were not given the scope of work to validate the documents that

9 we just reviewed of UBS, which are the hallmarking list, the

10 refining list, and then the vaulting receipts, such as the G4S,

11 vaulting receipt and SKR. So, with that said, is that an

12 accurate reading of your report with what we've just reviewed?

13  MS. SUM: Objection, form.

14  BY MR. BARBER:

15 A When I say that the scope of work did not require us

16 to validate a document, which means that to investigate and

17 challenge the, whether it is a fake document or a genuine

18 document. Right. So that's, that's an investigation part, a

19 forensic review. Right, but when -