UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

SECURITIES AND EXCHANGE COMMISSION,
Plaintiff,

v.

ARBITRADE LTD.;
CRYPTOBONTIX INC.;
TROY R.J. HOGG;
JAMES L. GOLDBERG;
STEPHEN L. BRAVERMAN; and
MAX W. BARBER,
Defendants,

and

SION TRADING FZE,
Relief Defendant.

Case No. 22-cv-23171-DAMIAN/D'ANGELO

**JOINT NOTICE OF FOREIGN ADJUDICATIVE FACTS**

**PURSUANT TO FED. R. EVID. 201(b)(2)**

(NO RELIEF REQUESTED)

Defendants Troy R.J. Hogg and James L. Goldberg, appearing pro se, respectfully submit this Joint Notice pursuant to Federal Rule of Evidence 201(b)(2). This Notice identifies adjudicative facts found by foreign tribunals and courts in proceedings involving the same DIG tokens, related entities, and individuals as in this action.

This Notice:

- does not request relief;
- does not seek reconsideration or modification of any order;
- does not present legal argument; and
- is submitted solely to identify adjudicative facts "capable of accurate and ready determination from sources whose accuracy cannot reasonably be questioned."

## I. FOREIGN DECISIONS IDENTIFIED

The following decisions concern the same DIG tokens, entities (including Cryptobontix Inc. and Arbitrade Ltd. / "Arbitrade Bermuda"), and individuals (including Mr. Hogg, Mr. Goldberg, and Mr. Braverman):

1. **Capital Markets Tribunal (Ontario),** *Hogg (Re)*, **2024 ONCMT 15** – Merits Decision (June 14, 2024).

2. **Capital Markets Tribunal (Ontario),** *Hogg (Re)*, **2024 ONCMT 31** – Sanctions and Costs Decision (December 19, 2024).

3. **Ontario Superior Court of Justice, Divisional Court,** *Hogg v. Chief Executive Officer of the OSC*, **2025 ONSC 6214** – Reasons for Decision (November 7, 2025).

These rulings are publicly available on official Canadian tribunal and court websites.

## II. FOREIGN ADJUDICATIVE FACTS (BY TOPIC)

### A. Token Classification — DIG Tokens Themselves Are Not Investment Contracts

**Capital Markets Tribunal (Merits Decision):**

- "We find that the Tokens considered alone are *not* 'investment contracts'." (¶85)

- "Without those representations, there is *no investment contract* in this case." (¶107)

### B. How the Tokens Were Sold — International Crypto-Asset Trading Platforms

**Capital Markets Tribunal (Merits Decision):**

- "The Unity Ingot tokens (and, later, the Dignity tokens) were sold on two crypto asset trading platforms: *Livecoin and C-CEX*." (¶65)

**Divisional Court (Appeal):**

- "The appellants represented to the public that the funds generated from the sale of the Tokens on *international trading platforms* would be used to purchase cryptocurrency mining equipment." (¶8)

### C. Who Sold the Tokens – Braverman and Goldberg, and Their Corporate Roles

**Capital Markets Tribunal (Merits Decision):**

- "During the Material Time, Hogg engaged two individuals, Stephen Braverman and James Goldberg, to sell the Unity Ingot tokens and Dignity tokens. Braverman and Goldberg both became shareholders of Arbitrade Bermuda. Braverman was its Chief Operating Officer and Goldberg was an assistant to the *Chairman* and *CEO*." (¶66)

- "Braverman and Goldberg, in turn, sold the Tokens to purchasers through *Livecoin and C-CEX* in exchange for bitcoin (or other cryptocurrency)." (¶67(d))

- "Braverman sold Tokens on the trading platforms to purchasers who were known to him. According to Hogg, *Goldberg sold Tokens to anyone who was willing to buy them on the trading platforms without knowing who the purchaser was.*" (¶67(e))

- "Braverman and Goldberg, who had significant roles with Arbitrade Bermuda, were primarily responsible for selling the Tokens during the Material Time." (¶201, in part)

**Divisional Court:**

- "Mr. Hogg engaged two individuals to sell the Tokens through crypto asset trading platforms (*Livecoin and C-CEX*). During the material time, Stephen Braverman and James Goldberg, two shareholders of Arbitrade Bermuda, were involved in selling Tokens through *the international* exchanges. Mr. Braverman was also Chief Operating Officer and Mr. Goldberg was assistant to the *Chairman* and Chief Operations Officer of Arbitrade Bermuda." (¶9)

### D. Flow of Funds

**Capital Markets Tribunal (Merits Decision):**

- "Purchasers of Tokens sent their payments (in bitcoin or other cryptocurrency or crypto asset) to accounts on *Livecoin* controlled by Hogg, or Braverman or Goldberg. In each case, the payments then went from the applicable *Livecoin* account to an account on the Genesis trading platform held by Braverman's company Rozgold Capital LLC." (¶67(f))

- "On the Genesis platform, Rozgold converted the bitcoin (or other cryptocurrency or crypto asset) received from purchasers of the Tokens into US dollars." (¶67(g))

- "...because of Braverman's knowledge as the sender of the funds and his role as the Executive VP and Chief Operations Officer of Arbitrade Bermuda..."(¶183(h))

The Tribunal summarized the proceeds as follows:

- "Arbitrade Bermuda received approximately US $41.6 million." (¶69, in part)
- "At least 1.5 billion Tokens were sold between May 2017 and November 2018." (¶74)
- "In 2018 Arbitrade Bermuda received US $41,622,965.27 in Cryptobontix 'token sale proceeds', and that all or nearly all this amount was proceeds from the sale of the Tokens." (¶76)
- "These two amounts combine to establish that the proceeds of Token sales were at least US $51,732,003.27." (¶76)

**Capital Markets Tribunal (Sanctions Decision):**

- "We find that the US $51,732,003.27 obtained from investors who purchased Tokens is an amount obtained as a result of the non-compliance... Of that amount, Arbitrade Bermuda received US $41,622,965.27." (¶50)

**Divisional Court (2025 ONSC 6214):**

- "More than 1.5 billion Tokens were sold. At least US $51.7 million was raised from investors via the Token sales.
Arbitrade Bermuda received US $41.6 million of investor funds in 2018." (¶10)

**E. Purchaser Anonymity - Identities and Numbers of Purchasers Could Not Be Determined**

**Capital Markets Tribunal (Merits Decision):**

- "The Commission introduced *no evidence* that confirmed the total number of purchasers of Tokens, how many each purchased, when they purchased them, or their identities." (¶80)
- "The reality that the sale of crypto assets, by its very nature, *can make it difficult to identify individual purchasers.*" (¶117)

**Divisional Court:**

- "The Panel was cognizant of the nature of the scheme when they correctly observed 'the reality that the sale of crypto assets, by its very nature, *can make it difficult to identify individual purchasers.*'" (¶91)

### F. Corporate Structure - Arbitrade Bermuda's Relationship to Cryptobontix and the Tokens

**Capital Markets Tribunal (Merits Decision):**

- "Arbitrade Bermuda was established by Hogg and others with the intention that it acquire or combine with Cryptobontix and Arbitrade Exchange and operate a digital asset business, including a 'cryptocurrency exchange'." (¶57)

- "Arbitrade Bermuda nevertheless treated Cryptobontix and the Tokens as part of its business and represented this to be the case." (¶125)

- "Braverman was its Chief Operating Officer and Goldberg was an assistant to the *Chairman and CEO*." (¶66)

**Divisional Court:**

- "Arbitrade Ltd. ('Arbitrade Bermuda') was established by Mr. Hogg and others, to combine Cryptobontix and Arbitrade Exchange. Mr. Hogg indirectly owned 67% of Arbitrade Bermuda's shares through his personal holding companies. TJL and Gables are Mr. Hogg's holding companies." (¶7)

- "During the material time, Stephen Braverman and James Goldberg, two shareholders of Arbitrade Bermuda, were involved in selling Tokens... Mr. Braverman was also Chief Operating Officer and Mr. Goldberg was assistant to the *Chairman and Chief Operations Officer* of Arbitrade Bermuda." (¶9)

### G. Compelled Testimony and Redaction - Section 9 Evidence Act Protections Invoked and Withheld

**Divisional Court:**

- "In 2019, the Ontario Securities Commission... began investigating the appellants... The Commission conducted compelled interviews of Mr. Hogg. During the compelled interviews, counsel for Mr. Hogg confirmed that Mr. Hogg was taking and relying upon any and all testimonial protections available to him as a compelled

- witness, including the protections found in s. 9 of the Evidence Act, R.S.O. 1990, c. E.23." (¶15)

- "The transcript of Mr. Hogg's compelled interviews... *had been edited*... The portion of the transcript where Mr. Hogg raised that he was taking the protection of s. 9 of the Evidence Act at his interview was **redacted**. Thus, the Panel was not aware of this potential admissibility issue." (¶55)

### III. PURPOSE AND LIMITATIONS OF THIS NOTICE

This Notice is limited to adjudicative facts from foreign tribunals and courts whose accuracy cannot reasonably be questioned. It:

- does not request relief;
- does not seek preclusive effect for any foreign ruling;
- does not argue how these facts affect any claim or defense; and
- does not ask the Court to draw any conclusion.

Defendants expressly reserve all rights to rely on these adjudicative facts, together with applicable U.S. and foreign law, in later motions, trial briefing, and argument.

Dated: December 3rd, 2025

Respectfully,

_____

James L. Goldberg

Pro Se Defendant

515 NW 120th St, Miami, FL 33168

james_goldberg@msn.com | (305) 785-6900

_____

Troy R. J. Hogg

Pro Se Defendant

72859 Sunridge Crescent

Dashwood, Ontario, Canada

troyhogg2020@protonmail.com | (519) 330-6570

December 3rd, 2025

**Clerk of Court**
United States District Court
Southern District of Florida

Re: *SEC v. Arbitrade Ltd. et al.*, Case No. 22-cv-23171-DAMIAN/D'ANGELO
**Submission of Joint Notices Pursuant to Court Rules**

Dear Clerk,

Please file the enclosed documents in the above-captioned matter on behalf of **Defendant James L. Goldberg**, appearing pro se, and for **Defendant Troy R.J. Hogg**, who joins these filings:

1. **Joint Notice of Foreign Adjudicative Facts Pursuant to Fed. R. Evid. 201(b)(2)**;
2. **Joint Notice of Additional Foreign-Law Authorities Pursuant to Fed. R. Civ. P. 44.1**; and
3. **Joint Notice of Supplemental Authorities**.

These Notices do not request relief and are submitted for the Court's consideration in advance of trial under the governing federal rules. Copies have been served on all counsel and pro se parties in accordance with the Federal Rules of Civil Procedure.

Please enter these documents on the docket at your earliest convenience.

Respectfully submitted,

/s/ James L. Goldberg

**James L. Goldberg**
Pro Se Defendant

UNITED STATES DISTRICT COURT