UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-23171-DAMIAN/D'ANGELO

FILED BY [signature] D.C.
JAN 06 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

ARBITRADE LTD., et al.,

Defendants.

**DEFENDANT MAX BARBER'S REPLY IN SUPPORT TO EXCLUDE THE TESTIMONY OF FAISAL AHMED**

Defendant Max Barber ("Defendant"), proceeding *pro se*, respectfully submits this Reply to the Securities and Exchange Commission's ("SEC") Response in Opposition to Defendant's Motion to Exclude the Testimony of Faisal Ahmed ("Daubert Motion").

The SEC's opposition fails because it attempts to defend an unreliable expert by relying

on a pre-2023 evidentiary standard regarding "weight versus admissibility" that has been expressly abrogated by the amendments to Federal Rule of Evidence 702. Furthermore, the SEC's attempt to characterize this Motion as "back-door expert testimony" is a distraction from the Court's essential gatekeeping function.

Defendant is not offering a competing "expert opinion," but is pointing out the expert's failure to read the plain text of the very standards (ISA 501) and contracts (MOU) he claims to have applied. Under the amended Rule 702, the Court must exclude expert testimony that is not based on sufficient facts or a reliable application of methodology. The SEC cannot satisfy its burden of proof for an expert who admitted to "blindly relying" on counsel-selected documents, ignored the plain text of the governing Memorandum of Understanding ("MOU"), and manufactured "red flags" by misattributing third-party security protocols to Defendant's negligence.

Because Mr. Ahmed's opinion lacks the "intellectual rigor"[1] required by the Supreme Court and the Federal Rules of Evidence, his testimony must be excluded.

## I. THE SEC RELIES ON ABROGATED CASE LAW TO DEFEND AN UNRELIABLE EXPERT

The SEC repeatedly argues that Mr. Barber's objections to Ahmed's factual basis "go to the weight of the evidence rather than its admissibility," citing *Rosenfeld v. Oceania Cruises,*

[1] *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) (holding that a trial judge must ensure an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field").

*Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011).[2] This argument is legally defunct. The 2023 Amendments to Federal Rule of Evidence 702 were enacted specifically to correct the "incorrect application" of the rule by courts that held sufficiency of facts is a jury question. The Advisory Committee Notes to the 2023 Amendment explicitly state:

> "[M]any courts have held that the critical questions of the sufficiency of an expert's basis [and] the application of the expert's methodology... are questions of weight and not admissibility. **These rulings are an incorrect application of Rules 702 and 104(a).**" (Fed. R. Evid. 702 advisory committee's note to 2023 amendment).

Under the Amended Rule 702, the SEC must demonstrate to the Court *by a preponderance of the evidence* that Mr. Ahmed's opinion is reliable. The Fourth Circuit's decision in *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 283–84 (4th Cir. 2021)—cited approvingly by the Rules Committee—establishes that deferring "shaky" expert testimony to the jury is a reversible abdication of the Court's gatekeeping function.

**A.      Ahmed Admitted to "Blind Reliance" on Counsel and Failed to Review Controlling Contracts.**

Rule 702(b) demands that testimony be "based on sufficient facts or data." The SEC argues that Mr. Ahmed reviewed the "relevant" documents.[3] However, Mr. Ahmed's deposition proves he relied exclusively on a filtered record provided by the Plaintiff, a practice

---

[2] Pl.'s Resp. at 8, ECF No. 547
[3] Pl.'s Resp. at 6, ECF No. 547

strictly prohibited in the Southern District of Florida.

### 1. The "Counsel-Selected" Evidence Problem

Mr. Ahmed testified: "The documents that have been, the relevant documents that have been shared with us, we've reviewed those documents." [4] When pressed on whether he independently verified the record, he clarified the passive nature of his methodology: "documents were sent to us. So, and all the documents which were sent to us, we've reviewed them" [5] *In re Trasylol Products Liability Litigation,* 709 F. Supp. 2d 1323, 1337 (S.D. Fla. 2010), this Court excluded an expert who "reviewed only the documents Plaintiffs' counsel selected for her" and failed to independently investigate the factual record.

Mr. Ahmed has committed the exact same error. An expert who blindly accepts a "curated" binder from counsel acts as an advocate, not a scientist. By admitting he did not independently review the Defense production to determine relevance, Mr. Ahmed fails the "sufficient facts" requirement of Rule 702(b).

### 2. The "Press Release" Fallacy: Prioritizing Marketing over Contracts

The SEC attempts to excuse Mr. Ahmed's failure to analyze the Memorandum of Understanding ("MOU") by arguing it "contradicted" Arbitrade's November 2018 Press Release, which claimed it had "received title" to the gold, thereby rendering the MOU's 15-year supply

[4] Def.'s Mot., Ex. 2 (Ahmed Dep. Tr. 24:24) ECF No. 389
[5] Def.'s Mot., Ex. 2 (Ahmed Dep. 25:6–8) ECF No. 389

term irrelevant.[6] This argument is logically and legally flawed. The MOU was executed on July 2, 2018,[7] establishing the legal framework of the transaction months before any public marketing occurred. This defense backfires because it exposes that Mr. Ahmed failed to even read the Press Release the SEC now relies upon.

- **Contractual Primacy**: A "standards" expert assessing due diligence knows that the legal contract (MOU) governs the mechanics of a transaction, not a public relations statement.
- **Conflation of Title and Logistics**: The SEC conflates "Title" (legal ownership) with "Physical Logistics" (immediate delivery). It is standard industry practice to hold title to allocated gold without immediately moving the entire stockpile; the MOU specifically outlined this logistical reality with a 15-year supply term.[8]
- **The "Single Vault" Strawman**: Mr. Ahmed opines that physically vaulting 395 tons in Dubai immediately was "impossible" because it would require a single "65x65 foot vault" that no single facility in Dubai could accommodate.[9] However, the Press Release explicitly states that Arbitrade received title to gold stored at "independent security **facilities**"(plural).[10]
- **Methodological Failure**: By ignoring the word "facilities," Mr. Ahmed manufactured a logistical impossibility—a single super-vault—that neither the MOU nor the Press Release ever claimed existed. His calculation regarding the capacity of a single

[6] Pl.'s Resp. at 15, ECF No. 547
[7] Def.'s Mot., Ex. 2
[8] Def.'s Mot., Ex. 4 (Memorandum of Understanding), ECF No. 389
[9] Def.'s Mot., Ex. 1 (Ahmed Expert Report at 18) ECF No. 389
[10] Pl.'s Resp. at 16, ECF No. 547 (citing Press Release)

hypothetical vault is mathematically irrelevant to a multi-facility storage plan

- **Admission of Omission**: By relying on the Press Release to ignore the Contract, Mr. Ahmed criticized a logistical scenario (immediate delivery) that the transaction documents never contemplated. When asked during his deposition why he ignored the 15-year term in the MOU, he did not cite the Press Release, but simply admitted: "If you look at the, again, the engagement of my expert report, it's not to actually validate the clauses of... so if you look at the scope of work... **that was beyond my scope**" [11]

The SEC cannot now use a Press Release to retroactively cure their expert's sworn admission that he failed to analyze the governing contract.

## B. Ahmed Fails Rule 702(d): Unreliable Application of Methodology

The SEC attempts to dismiss Mr. Barber's arguments regarding ISA 501 standards as inadmissible "back-door expert opinions."[12] This is incorrect. It is not "expert opinion" to read the plain text of a standard. It is a gatekeeping function to exclude an expert who ignores that text.

### 1. The "Physical Inspection" Fallacy (ISA 501)

Mr. Ahmed opines that Defendants failed due diligence by relying on a Safe Keeping Receipt (SKR) instead of physically inspecting the gold. He cites ISA 501 as his authority. However, ISA 501, Paragraph 7.4.20 explicitly permits exceptions to physical inspection when

[11] Def.'s Mot., Ex. 2 (Ahmed Dep. Tr 31:10–23) ECF No. 389)
[12] Pl.'s Resp. at 17, ECF No. 547

attendance is "impracticable."[13]

Crucially, ISA 501 provides a specific alternative: "Request confirmation from the third party as to the quantities and condition of inventory held on behalf of the entity."[14] This is exactly what Defendants did by obtaining the SKR and engaging BDO to verify it. Mr. Ahmed's insistence that physical inspection was mandatory contradicts the very standard he cites. An expert who selectively applies only the parts of a standard that support his conclusion, while ignoring the parts that refute it, fails the reliability requirement of Rule 702(d).

### 2. The "Forensic Investigation" Gap

The SEC argues that Mr. Ahmed is not opining on fraud, yet his report concludes that the transaction documents do not support the existence of the gold. This is a forensic conclusion. However, Mr. Ahmed explicitly testified: "Contacting the third parties is not in the scope of work... the scope was not forensic investigation."[15]

This creates an insurmountable "analytical gap." Mr. Ahmed is offering a forensic conclusion (non-existence of assets) without having performed a forensic investigation. There is no reliable methodology that allows an expert to conclude assets do not exist simply because he refused to look for them. See *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997) (court may exclude opinion where there is "too great an analytical gap between the data and the opinion proffered").

**C. The G4S Emails: A "Methodology" Failure, Not a Factual Dispute:** The SEC

---

[13] Def.'s Mot., Ex. 8. (Int'l Standard on Auditing (ISA) 501 § 7.4.20) ECF No. 389
[14] Def.'s Mot., Ex. 8. (Int'l Standard on Auditing (ISA) 501§7.4.22, ECF No. 389.
[15] Def.'s Mot., Ex. 2 (Ahmed Dep. Tr. 103:10-15) ECF No. 389

attempts to salvage Mr. Ahmed's opinion on the failed video conference by characterizing it as a factual disagreement suitable for cross-examination.[16] This defense fails because it ignores the analytical gap between the evidence and the conclusion

**1. Improper Attribution of Third-Party Policy:**

Mr. Ahmed alleges that "the independent accounting firms were directed or not allowed to perform certain procedures by SION" and that Defendants "ignored the red flag presented when SION told BDO to drop its request for a video conference with the G4S employee." [17] However, Mr. Ahmed's allegation effectively ignores a **dispositive fact**: the failure to conduct the video conference was mandated by G4S corporate policy, not by any act or omission of SION or the Defendants. The G4S email explicitly states "G4S does not partake in video conferences due to security reasons and has written policy."[18] Mr. Ahmed is attributing the security policy of a third-party custodian (G4S) to the negligence of the Defendants.

Mr. Ahmed is attempting to convert a **third-party security refusal** into **Defendant misconduct**.

- **The Fact:** G4S explicitly rejected the video conference request citing mandatory corporate security policy.
- **The Expert Opinion:** SION's instruction to BDO to "drop the request" constitutes a "red

[16] Pl.'s Resp. at 16, ECF No. 547
[17] Def.'s Mot., Ex. 1(Ahmed Expert Report at 15) ECF No. 389
[18] Def.'s Mot., Ex. 5 (BDO related email correspondence with G4S at 1) ECF No. 389

flag."

- **The Rebuttal:** It is logically impossible for SION's instruction to be a "red flag" when it was merely an acceptance of G4S's non-negotiable policy. SION did not block the call; G4S blocked the call. Instructing an auditor to stop demanding a procedure that the custodian has already refused is not "suspicious"—it is an acceptance of reality.

**2. Selective Reliance is a Cover for Cherry-Picking:**

The SEC attempts to justify Mr. Ahmed's "red flag" conclusion by arguing he properly considered the "email chains involving BDO" and the specific role of SION in those communications.[19] This is a classic example of **cherry-picking**. Interpreting an explicit adherence to third-party security protocols as a deceptive tactic to conceal assets is not expert analysis—it is narrative invention.

Mr. Ahmed selected two facts that fit the SEC's theory: (1) the call did not happen, and (2) SION was in the email loop. However, he **ignored the dispositive fact** contained in the exact same email chain: G4S's own written security policy. A reliable methodology requires an expert to account for evidence that refutes their conclusion. By ignoring the documented, non-deceptive reason for the failed call (G4S policy) and instead inventing a "red flag" based on SION's mere presence in the thread, Mr. Ahmed has failed to apply the "intellectual rigor" required by *Kumho Tire*.

[19] Pl.'s Resp. at 16, ECF No. 547

**3. Application of *Joiner:*** *Under General Electric Co. v. Joiner,* 522 U.S. 136, 146 (1997), the Court must exclude opinions where there is "simply too great an analytical gap between the data and the opinion proffered." Here, the gap is absolute. Mr. Ahmed's attempt to impute active interference to SION—without a single document proving such a directive occurred—is the exact type of ipse dixit that Joiner prohibits. There is **no evidence** in the record that SION "directed" BDO to drop the request; rather, the record shows G4S provided a non-negotiable refusal based on their own corporate security protocols. The SEC cannot use "weight of the evidence" to bridge a gap that logic cannot cross.

**D. The "Ostrich" Problem: Willful Ignorance of Critical Affidavits**

Compounding his reliance on limited data, Mr. Ahmed admitted he had never seen the Affidavit of Hon. Mike Farhat (Exhibit 3)[20] The SEC defends this omission by arguing the affidavit was not provided to the expert and is "irrelevant" because the witnessed transfer of gold (2008) predates the 2018 transaction.[21]

This argument fails. The affidavit is highly relevant to provenance. Mr. Ahmed's report implies that the gold likely never existed or was never properly titled. Yet, Mr. Farhat's sworn affidavit testifies that he "physically seen, touched, and inspected" the gold and witnessed the title transfer in 2008.[22] By remaining "unaware" of this affidavit—which was executed in 2022

[20] Def.'s Mot., Ex. 3 (Affidavit of Hon. Mike Farhat, dated August 2, 2022) ECF.389
[21] Pl.'s Resp. at 14-15, ECF No. 547
[22] Def.'s Mot., Ex. 3 (Affidavit of Mike Farhat ¶ 4) ECF No. 389

and available during discovery—Mr. Ahmed engaged in the "ostrich effect"—burying his head in the sand to avoid inconvenient facts. An expert opinion that ignores sworn testimony lacks the "intellectual rigor" required by *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

### E. Improper Reliance on Unverified Allegations (Rule 702(b))

The SEC argues that Mr. Ahmed reviewed the Complaint merely to "understand the respective positions of the parties".[23] However, Mr. Ahmed's Expert Report explicitly lists the "SEC's Complaint" under the heading "Basis for Opinion and Documents Reviewed"—not merely as background context.[24]

By his own admission, Mr. Ahmed did not perform a forensic investigation to verify the underlying facts. Instead, he utilized the unproven allegations of the party hiring him as a "basis" for his expert opinion. An expert who treats a plaintiff's pleading as a factual "basis" for their conclusion—while simultaneously refusing to independently investigate the validity of those facts—is engaging in circular reasoning. This violates Rule 702(b)'s requirement that an opinion be based on "sufficient facts or data," not unverified allegations.

### F. The "Visual Provenance" Failure: Dismissing Photos Without Forensics

The SEC attempts to excuse Mr. Ahmed's failure to analyze photographic evidence of the gold by arguing the photos were "unauthenticated," from 1966, or from 2021.[25] This defense fails for two reasons.

---

[23] Pl.'s Resp. at 15, ECF No. 547
[24] Def.'s Mot., Ex. 1(Ahmed Expert Report at 4) ECF No. 389
[25] Pl.'s Resp. at 17, ECF No. 547

### 1. Failure to Verify Metadata or Hallmarks

Mr. Ahmed is proffered as a gold industry expert. Industry standards (LBMA/OECD) require verifying provenance (the origin history of the gold). A photograph from 1966 showing the original hallmarks is critical provenance data that establishes the gold's origin.[26] A photograph from 2021 establishes the continued existence of the asset.[27]

Mr. Ahmed admitted he did not perform a "forensic investigation." Therefore, he did not analyze the metadata (EXIF data) of the digital photos to verify their dates, nor did he analyze the hallmarks visible in the photos to trace the refiner. Instead, he simply ignored them. An expert who dismisses visual evidence of the asset's existence based on a cursory glance—without forensic verification of dates or hallmarks—lacks the requisite methodological rigor.

### 2. The Inconsistency of "Irrelevance"

The SEC argues that photos from 2021 are "irrelevant" because they post-date the 2018 transaction.[28] This contradicts the SEC's core theory that the gold never existed. If the gold appears in a 2021 photo, it existed in 2018. By refusing to analyze the photos, Mr. Ahmed blinded himself to evidence that contradicted his conclusion that the asset verification was a "sham."

---

[26] Def.'s Mot., Ex. 3 Ex.7 (1966 Certificate and Hallmarks), ECF No. 389
[27] Def.'s Mot., Ex. 6 (2021 Photos), ECF No. 389
[28] Pl.'s Resp. at 17, ECF No. 547

**G. The "Back-Door Expert" Defense is a Distraction from the Gatekeeping Function** The SEC argues that Mr. Barber's Motion attempts to "back-door" an expert opinion regarding industry standards without having disclosed a rebuttal expert. This argument is a fundamental misunderstanding of the Court's role under *Daubert*.

**1. Reading Plain Text is Not "Expert Opinion"**

Mr. Barber is not offering an expert opinion on complex principles. He is simply citing the **plain text** of the very standards Mr. Ahmed claims to rely upon. Identifying that an expert has ignored a written exception in the standard he cites (such as ISA 501, Para 7.4.20) is proof of a **methodological failure** under Rule 702(d).

**2. The Burden of Proof Remains on the SEC**

The SEC implies that because the Defense did not hire a rebuttal expert, Mr. Ahmed's opinion must be accepted. This is legally incorrect. The SEC bears the burden of proving that Mr. Ahmed's methodology is reliable. The Defense is not required to hire an expert to point out that the Plaintiff's expert failed to read the contract (MOU), ignored the security policy (G4S emails), and contradicted the written audit standard (ISA 501).

**3. "Gatekeeping" Does Not Require a Rebuttal Expert**

Pointing out "analytical gaps"—such as the failure to review the Farhat Affidavit—is the proper role of a Daubert motion, regardless of whether a rebuttal expert was retained

## III. CONCLUSION

The SEC relies on the abrogated *Rosenfeld* standard to defend an expert who relied on counsel-selected documents. Mr. Ahmed admits he did not review the controlling MOU, prioritized marketing materials over legal contracts, mischaracterized compliance with G4S security protocols as "red flags," improperly relied on the SEC's own complaint as a basis for his opinion, and refused to forensically analyze photographic evidence of the gold's existence.

**WHEREFORE**, Defendant Max Barber respectfully requests that this Honorable Court **GRANT** the Motion to Exclude the Testimony of Faisal Ahmed.

Dated: December 16, 2025

Respectfully submitted,
/s/ Max W. Barber
Max W. Barber,
*Pro Se* 1028 S 1900 E SLC,
Utah 84108
Tel: (801) 518-1821
23blackbee@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16 day of December, 2025, I served a true and correct copy of DEFENDANT MAX BARBER'S REPLY IN SUPPORT TO EXCLUDE THE TESTIMONY OF FAISAL AHMED via the Court's CM/ECF system, Email, and or First Class Postage to the following counsel of record and parties.

Respectfully submitted,

*/s/ Max W. Barber*

Max W. Barber Defendant, Pro Se
1028 S 1900 E SLC, Utah 84108
Tel: (801) 518-1821
23blackbee@gmail.com

Via E-mail Alice K. Sum
Senior Trial Counsel
U.S. Securities and Exchange Commission
Email: sumal@sec.gov

Via First Class Postage Clerk of Court
U.S. District Court for the Southern District of Florida
400 North Miami Avenue
Miami, FL 33128

Via E-mail Stephen L. Braverman, pro se
E-mail: sbraverman22@gmail.com

Via E-mail Troy R.J. Hogg, pro se
E-mail: troyhogg2020@protonmail.com

Via E-mail James L. Goldberg, pro se

E-mail: James_Goldberg@msn.com

Max Barber
4645 S Highland Dr
Salt Lake Cty UT 84117-5136

063S0001443215
$1.030
US POSTAGE IMI
FIRST-CLASS
FROM 84117
12/16/2025
Stamps.com

REC'D BY________D.C.
JAN 06 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

Clerk of Court
Wikie D. Ferguson Jr. U.S. Courthouse
400 N Miami Ave
MIAMI FL 33128-1801